# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
### Tampa Division

**MARCIA GAALSWYCK-KNETZKE,**
**individually and on behalf of all**
**others similarly situated,**

     **Plaintiff,**

**v.**                          **CASE NO. 8:08-cv-493-T-26TGW**

**THE RECEIVABLES MANAGEMENT**
**SERVICES CORPORATION,**
**a Delaware corporation**

_____/

### PLAINTIFF MARCIA GAALSWIJK-KNETZKE'S
### MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM

Plaintiff Marcia Gaalswijk-Knetzke[1] respectfully moves for the entry of an Order pursuant

to Federal Rule of Civil Procedure 23(b)(3) certifying this case as a class action.  Plaintiff filed this

class action against The Receivables Management Services Corporation ("RMS") alleging that form

collection letters RMS sent out (the "Form Collection Letters") violate the Fair Debt Collection

Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Florida Consumer Collection

Practices Act (the "FCCPA"), Fla. Stat. § 559.55, *et seq.*  Plaintiff requests that the Court certify the

following class:

> All residents of the State of Florida who received debt collection notices and/or
> letters from RMS relating to a consumer debt on or after March 14, 2006.[2]

_____

[1]It has come to the attention of counsel that Plaintiff's name has inadvertently been misspelled in
the pleadings in this case. Plaintiff's last name is correctly spelled "Gaalswijk-Knetzke."

[2]Excluded from the class are: any person employed by RMS or its parents, subsidiaries, or affiliates;
any control person of RMS or its parents, subsidiaries, or affiliates; Class Counsel;  or any person

This case meets all of the requirements for class certification set forth in subsection (a) and subsection (b)(3) of Rule 23.  The prerequisites of subsection (a) – numerosity, the presence of common questions of law or fact, the typicality of the claims asserted by the representative Plaintiff, and his adequacy to represent the class – are all satisfied.  The further requirements of subsection (b)(3), that common questions predominate over individual questions and that a class action is the superior method of adjudicating those common questions, are also met.  Indeeed, this case is tailor-made for class action treatment.  RMS sent standard form collection letters to numerous consumers that violated the FDCPA and FCCPA.  For this reason, RMS's common course of conduct affected Plaintiff and all class members in a uniform fashion.  This case involves overarching questions common to the members of the proposed class, the resolution of which are necessary to any finding of liability against the Defendant.  In addition, it would be grossly inefficient for each class member to sue RMS for the individual damages at stake here.

## BACKGROUND

### I.    Introduction

This class action lawsuit involves a simple set of facts.  RMS is a debt collector doing business in Florida.  Compl. ¶ 5.  RMS sent Plaintiff a series of Form Collection Letters Plaintiff alleges violated the FDCPA and FCCPA.  Compl. ¶¶ 16-19, 25-57.  Numerous Florida consumers received collection letters that contained the same language and legibility problems that Plaintiff alleges made the Form Collection Letters unlawful.  *See* Joint Stipulation, attached as Exhibit A, ¶ 2.

---

who has a pending action for actual damages against RMS based on an alleged violation of the FDCPA or FCCPA.

II.     **Statutory Framework**

A.     **The FDCPA**

The FDCPA was enacted to protect consumers from "abusive debt collection practices." 15 U.S.C. § 1692(e). The statute additionally ensures that law-abiding debt collectors "who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* It was enacted based on "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found "contribute to the number of personal bankruptcies, to marital instability, to loss of jobs, and to invasions of individual privacy." § 1692(a).

A "significant feature" of this consumer protection measure "is a provision requiring the validation of debts." S. Rep. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695. That is, if a consumer disputes a debt, the debt collector must cease collection activities until the debt collector obtains verification of the debt and provides information regarding the debt to the consumer. 15 U.S.C. § 1692g(b). Debt collectors must provide consumers with an explanation of these rights – referred to as a "validation notice" – in writing within five days of the debt collector's initial communication with the debtor about the debt. § 1692g(a).

The validation notice required by the FDCPA "must be conveyed effectively to the debtor." *Swanson v. S. Ore. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1989). In determining whether this requirement has been violated, courts use "an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996); *see also Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting in the Eleventh Circuit the "least sophisticated consumer" standard

as to 15 U.S.C. § 1692e).  If "the least sophisticated debtor would likely be misled by" a validation notice, the debt collector has violated the FDCPA. *Swanson*, 869 F.2d at 1225.  Consistent with this "least sophisticated consumer" test, when the statutorily required validation notice "contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the Act." *Russell*, 74 F.3d at 34 (quoting *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991)).  "A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Id.* at 35.  Further, the validation notice "must be large enough to be easily read and sufficiently prominent to be noticed – even by the least sophisticated debtor." *Swanson*, 869 F.2d at 1225.

### B.  The FCCPA

The FCCPA is a Florida consumer protection statute seeks to protect Florida "consumers from the illegal and/or unscrupulous practices of debt collectors and other persons." *Schauer v. Gen. Motors Acceptance Corp.*, 819 So. 2d 809, 811-12 (Fla. 4th DCA 2002).  "Like the FDCPA, the [FCCPA] includes a list of prohibited collection practices that give right to a private cause of action." *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1124 (11th Cir. 2004) (citing Fla. Stat. §§ 557.72, 559.77).  The two provisions of the FCCPA relevant to this action prohibit any person collecting consumer debts from "willfully engag[ing] in . . . conduct which can reasonably expected to abuse or harass the debtor" or  "assert[ing] the existence of some . . . legal right when such person knows that the right does not exist."  § 559.72(7), (9).

### III.  Plaintiff's Allegations

The Form Collection Letters RMS sent Plaintiff and numerous other Florida consumers contained the following language on the reverse side of each letter:

4

> **If this is the first written notice you have received from this office in regard to the debt referred to on the other side of this letter and this is a consumer debt, then:**
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice RMS will provide you with the name and address of the original creditor, if different from the current creditor.

Compl. ¶ 22 (emphasis added); Ex. A (Joint Stipulation), ¶ 2.  Plaintiff alleges that the Form Collection Letters violated the FDCPA because the introductory language RMS inserted prior to the validation notice, in bold above, contradicted and overshadowed the required notice and misstated the law regarding Plaintiff's rights under the FDCPA.  Compl. ¶¶ 30-41.  Additionally, RMS printed the Form Collection Letters it sent consumers on poor quality paper, with the validation notice printed in light grey ink.  Compl. ¶¶ 42-45.  As a result, the notice was difficult to read, which Plaintiff alleges was an additional violation of the FDCPA. *Id.*

Plaintiff alleges that RMS's conduct also violated the FCCPA in two ways.  Compl. ¶¶ 48-57.  First, Plaintiff alleges RMS's actions of misleading and confusing Plaintiff regarding her FDCPA rights and communicating her FDCPA rights in a form that was difficult to read was conduct that annoyed and harassed Plaintiff.  Compl. ¶¶ 50-52.  Second, Plaintiff alleges that the introductory language RMS inserted prior to the validation notice in the Form Collection Letters shifted the burden to Plaintiff to make difficult legal and factual determinations, and thus improperly asserted that making those determinations was Plaintiff's obligation when that obligation was lawfully on RMS.  Compl. ¶¶ 53-56.

**ARGUMENT**

**This Case Should Be Certified as a Class Action Pursuant to Federal Rule of Civil Procedure 23.**

"It is well-established that class actions are a particularly appropriate and desirable means of redressing common claims for uniform legal violations that affect large numbers of persons in the same way." *Brown v. SCI Funeral Servs., Inc.*, 212 F.R.D. 602, 603 (S.D. Fla. 2003). That is precisely the situation in this case. The proposed class consists of numerous individual consumers who, absent the certification of a class action, would be unlikely to have the resources to pursue individual actions against the Defendant. As the United States Supreme Court has recognized, in such situations reality often dictates that the case proceed as a class action or not at all. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

Both the factual allegations in this action and the legal issues they raise are particularly well-suited to a class action. Numerous federal courts have recognized the appropriateness of certifying class actions involving, as this case does, claims of a common course of conduct involving form collection letters alleged to violate the FDCPA. *See, e.g. Keele v. Wexler*, 149 F.3d 589, 594-96 (7th Cir. 1998); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696-701 (S.D. Fla. 2004); *Fuller v. Becker & Polikoff, P.A.*, 197 F.R.D. 697, 700-01 (M.D. Fla. 2000); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 666-69 (M.D. Fla. 1999); *Blalek v. Encore Receivable Management, Inc.*, 244 F.R.D. 525, 527-31 (E.D. Wis. 2007); *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 508-15 (N.D. Cal. 2007).

Determination of whether to certify a class is procedural and does not depend on the substantive merits of the claims. *Eisen*, 417 U.S. at 178. In ruling on a motion for class certification, the well pleaded facts of the complaint are accepted as true, and the court does not

evaluate the merits of the case.  *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  Once the plaintiff has made a preliminary showing that the requirements for class certification have been met, the burden shifts to the defendant to show otherwise.  3 Herbert B. Newberg, *Newberg on Class Actions* §7.22 (4th ed. 2002).

The Court may certify a class action if the four prerequisites of Rule 23(a) and the requirements of at least one subsection of Rule 23(b) are satisfied.  Because Plaintiff satisfies the requirements of Rule 23(a) and 23(b)(3), this motion should be granted and the Court should certify the class.

### A.      The proposed class satisfies the requirements of rule 23(a).

Under Rule 23(a), there are four requirements for class certification: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) it must appear that the representative parties will fairly and adequately protect the interests of the class ("adequacy").  These four requirements for certification are met here.

### 1.      The class is so numerous that joinder of all members is impracticable.

The proposed class indisputably satisfies the numerosity requirement, and RMS has stipulated that numerosity is satisfied.  Ex. A (Joint Stipulation), ¶ 2.  To satisfy the numerosity requirement of Rule 23(a)(1), "[p]recise enumeration of the members of a class is not necessary." *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990).  Although there is no legally established numerical test, "generally if the named plaintiff demonstrates that the potential

number of plaintiffs exceeds 40," the numerosity requirement is satisfied. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

Moreover, federal courts routinely use "common sense" in determining whether numerosity has been established. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 229-230 (D.N.J. 2005) ("To meet the numerosity requirement, class representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members.") (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997)); *In re Resource America Sec. Litig.*, 202 F.R.D. 177, 181 (E.D. Pa. 2001)("In determining whether a proposed class meets the numerosity requirement, 'a court may accept common sense assumptions.'") (quoting *In re Cephalon Sec. Litig.*, 1998 WL 470160, at *2 (E.D.Pa. Aug.12, 1998)). As the court noted in *Vargas v. Calabrese*, 634 F. Supp. 910, 918 (D.N.J. 1986), some classes "are clearly large enough to satisfy the requirement of numerosity."

RMS estimates that it sent at least 16,000 Florida consumers letters containing the language and legibility problems Plaintiff contends made the Form Collection Letters unlawful in the two years before Plaintiff filed her Complaint.[3] Based on that figure, RMS has stipulated that the numerosity requirement is satisfied here.[4] The class is so numerous as to make joinder of all members impracticable. The requirement of Rule 23(a)(1) has been met.

---

[3]The FDCPA has a one-year statute limitations, 15U.S.C. § 1692k(d), while the FCCPA's statute of limitations is two years, Fla. Stat. § 559.77(4).

[4]The parties recognize that it is possible subsequent developments in the litigation of this matter may narrow the class definition and therefore affect the size of the class, for example by shortening the class period or limiting the theories under which the class is eligible to recover damages. Given the number of form letters RMS sent to Florida consumers with identical language and legibility problems, however, numerosity is satisfied even under the narrowest of possible class definitions.

2.      **There are questions of law and fact common to Plaintiff and the class.**

There are numerous issues of law and fact common to the proposed class in this case.  RMS has stipulated that the requirement of commonality is satisfied here.  Ex. A (Joint Stipulation) ¶ 3.

Under Rule 23(a)(2), the commonality requirement is satisfied if the named plaintiff shares at least one question of fact or law with the prospective class.  "The threshold of 'commonality' is not high. . . . [T]he rule requires only that resolution of the common questions affect all or a substantial number of the class members."  *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)).   "The commonality requirement is satisfied where questions of law refer to standardized conduct by defendants toward members of the proposed class."  *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992).  For example, where the class members' factual circumstances are materially identical and the "questions of law raised by the Plaintiffs are applicable to each [class] member," the commonality requirement is satisfied.  *Weiss v. York Hospital*, 745 F.2d 786, 809 (3d Cir. 1984).  "Not all factual or legal questions raised in the litigation need to be common, so long as at least one issue is common to all class members."  *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000).  A sufficient nexus must also be established between the class representatives and the class members.  *Id.*  This nexus is established if the claim or defenses of the class and the class representatives arise from the same event, pattern or practice and are based on the same legal theory.  *Id.*

The questions of law and fact in this case are undeniably common.  The subject of the action is form collection letters RMS sent out that contain identical language Plaintiff contends violates the FDCPA and FCCPA and that were printed on the same poor quality paper in the same ink.  As the court stated in *Keele*, "Common nuclei of facts are typically manifest where ... the defendants

have engaged in standardized conduct toward members of the proposed class by mailing to them allegedly illegal form letters or documents." 149 F.3d at 594 (collecting cases); *see also, e.g.*, *Agan*, 222 F.R.D. at 697 ("a plaintiff satisfies the commonality element when all class members received the same collection letter"); *Fuller*, 197 F.R.D. at 700 (commonality satisfied where all class members received one of two variations on collection letter and the "principal legal issues arising from the collections letters is whether the letters violate the FDCPA and FCCPA"); *Swanson*, 186 F.R.D. at 668 ("To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter."); *Blarek*, 244 F.R.D. at 528 (commonality satisfied where defendant "engaged in standardized conduct by mailing to the proposed class members allegedly illegal form letters").

The common questions of fact and law presented by this action include:

• whether by impermissibly shifting to the consumer RMS's statutory obligation under the FDCPA the Form Collection Letters overshadowed the validation notice in violation of Section 1692(g);

• whether the language preceding the validation notice in the Form Collections Letters is an inaccurate statement of the law that misled consumers regarding their rights under the FDCPA in violation of Section 1692(g);

• whether the illegibility of the validation notice overshadows and obscures the validation notice in violation of Section 1692(g);

• whether RMS's impermissible shifting of its statutory obligations under the FDCPA was conduct RMS reasonably should have expected would abuse or harass Plaintiff, in violation of section 559.72(7);

- whether RMS's printing of the validation notice in a format that was difficult to read was conduct RMS reasonably should have expected would abuse or harass Plaintiff, in violation of section 559.72(7);

- whether by impermissibly shifting its statutory burden under the FDCPA, RMS improperly asserted the existence of a legal right that RMS knew did not exist, in violation of section 559.72(9); and

- whether Plaintiff and the members of the class have sustained damages and are entitled to restitution as a result of RMS's violations of the FDCPA and the FCCPA and, if so, what is the appropriate measure of those damages.

The above preliminary list of common questions of law and fact satisfies the commonality requirement of Rule 23(a)(2). These fundamental questions pertain to RMS's common practices and procedures. They also hinge on the same set of operative facts, which are central to the resolution of the claim of the representative Plaintiff and each member of the proposed class.

### 3.     Plaintiff's claims are not only typical of but identical to those presented by the class.

Because Plaintiff asserts claims not only typical of, but identical to, those of the other members of the proposed class, the typicality requirement is easily satisfied in this case. Rule 23(a)(3)'s typicality requirement is satisfied if the class representative is a member of the class and possesses the same interests and suffers the same injury as the class members. *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Typicality does not require identical claims or defenses and factual variations will normally not render a class representative's claims atypical. *See*, *e.g. Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 65 (S.D. Ohio 1991) (liability claims based on single course of conduct are common to all class members and typical of each,

notwithstanding existence of some individual issues).   As long as the claims of the class representative "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).   "Although commonality and typicality are distinct inquiries, they are closely related and tend to merge." *Samuel-Bassett*, 212 F.R.D. at 278.   As is the case with the test for commonality, the test for typicality "is not demanding."   *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993).

The class representative's claims are typical if they arise "from the same event or practice or course of conduct that gives rise to the claims of the class members" and are "based on the same legal theory." *Samuel-Bassett*, 212 F.R.D. at 278.   Plaintiff and all proposed class members received the Form Collection Letters.   The claims of Plaintiff and all proposed class members are based on the same legal theories: that the language and format of the Form Collection Letters overshadowed and obscured the validation notice in violation of the FDCPA and FCCPA.   All class members seek the same remedy, statutory damages.   This set of circumstances satisfies the typicality requirement. *See Keele*, 149 F.3d at 595 (typicality satisfied where by mailing form letters defendants "engaged in the same course of conduct toward" named plaintiff and class members); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where "[t]he cause of action arose from a single event and there is no variation in legal theory"); *Fuller*, 197 F.R.D. at 700 (typicality requirement satisfied where all prospective class members "received a variation of the same collection letter as the named plaintiffs"); *Swanson*, 186 F.R.D. at 668 (typicality satisfied where plaintiff alleged validation notice "was contradictory and misleading to the least sophisticated consumer and Plaintiff as well as the putative class received the notice"); *Blarek*, 244 F.R.D. at 528

12

(typicality satisfied where named plaintiff and class members each received form collection letter and "each class member's claim relies in the same legal theory under the FDCPA").

Accordingly, the typicality requirement of Rule 23(a)(3) is met here.

        **4.**      **The Plaintiff will fairly and adequately protect the interests of the class.**

Plaintiff and her counsel are adequate representatives of the proposed class.  The adequacy requirement encompasses two questions: (1) whether the named plaintiff and counsel "have any conflicts of interest with other class members"; and (2) whether the named plaintiff and counsel "will prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.  Stated another way, the representative must not possess interests that are antagonistic to interests of the class and the representative's counsel must be qualified, experienced, and generally able to conduct the proposed litigation. *CV Reit*, 144 F.R.D. at 698.

The first portion of the adequacy requirement is satisfied here because there is no conflict of interest between the Plaintiff and the members of the class.  As the Fifth Circuit explained in *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981), "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class," the interests of the class are not antagonistic for representation purposes. *Id.* at 208. Here, the Plaintiff's claims are typical of and held in common with the claims of all members of the class. The interests of the Plaintiff and the class members are the same: to obtain a determination that RMS engaged in an unlawful common course of conduct in sending out the Form Collection Letters, which resulted in damages to the Plaintiff and the class compensable under the FDCPA and FCCPA.

The second portion of the adequacy test is also satisfied here. With respect to this criterion, courts generally look to the skill and experience of plaintiff's counsel rather than the personal qualifications of the named plaintiff. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel."); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982) (adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel). The Firm Resumes of Plaintiff's Counsel are attached to this motion as Exhibit B. Plaintiff's Counsel in the instant case will provide fair and adequate representation for the class. In particular, the class will be represented by a team of experienced litigators with a successful track record in consumer class actions and FDCPA litigation. Plaintiff's lawyers are committed to devoting the skills, time, and funding necessary to bring this litigation to a successful conclusion. Plaintiff's Counsel will provide fair and adequate representation for the class.

Further, Plaintiff will fairly and adequately protect the interests of the class. She is committed to the prosecution of this action. She has obtained qualified counsel to prosecute her rights and those of the class. Plaintiff has been kept informed of the status of this lawsuit, and she understands her responsibilities to the members of the class, including that she will have to act for the benefit of the class and will be required to make decisions on behalf of the class. *See* Affidavit of Marcia Gaalswijk-Knetzke, attached as Ex. C.

Rule 23(a)(4)'s adequacy of representation requirement is satisfied in this case.

**B.      The proposed class satisfies the requirements of Rule 23(b)(3).**

In addition to satisfying the requirements of Rule 23(a), the proposed class must be maintainable under one of the provisions of Rule 23(b). Plaintiff seeks certification pursuant to Rule

23(b)(3).  Rule 23(b)(3) requires that: (1) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" ("predominance"); and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" ("superiority"). Both criteria are met in this case.

### 1.      Common questions of law and fact predominate.

The common issues of law and fact predominate in this case.  While the commonality prong "requires that class members share a single issue," the predominance requirement mandates "that common issues predominate over issues affecting only individuals."  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 247 (D. Del. 2002).  "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *Bradberry v. John Hancock Mut. Life Ins. Co.*, 217 F.R.D. 408, 414 (W.D. Tenn. 2003).

The predominance test does not require that common issues be dispositive of the action or determinative of the liability issues.  Instead, courts should inquire into "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  In order to satisfy the predominance test, "common issues must constitute a significant part of the individual cases."  *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).  "In determining whether the predominance standard is met, courts focus on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 80 (D. Md. 1991); *see also Brown*, 212 F.R.D. at 606 (in determining predominance, "courts generally focus on whether there are common liability issues which may be resolved efficiently on a class-wide basis").

The claims here focus on the issues surrounding RMS's sending out the Form Collection Letters to Florida consumers.  Plaintiff and the class seek to remedy a common legal grievance arising from those common facts, involving letters that are identical in all material respects.  With respect to all class members, RMS's liability will hinge on the same questions regarding whether the Form Collection Letters violated the FDCPA and FCCPA.  The crucial facts that relate to how each consumer was injured are the same.  The legal theories applicable to each class member are also largely the same.  All the class members share an interest in recovering statutory damages.  Questions of law or fact common to the members of the class will thus predominate over questions affecting only individual members.  *See, e.g., Agan*, 222 F.R.D. at 701 ("common issues presented by sending allegedly illegal form letters ... predominate over any individual issues"); *Fuller*, 197 F.R.D. at 701 (questions of law or fact predominate in FDCPA action where basis for claim is "the language and content of" form collection letter); *Hunt*, 241 F.R.D. at 514 (predominance requirement satisfied in FDCPA action where "the legal issues arising from Defendant's demand letters are the same for each class member").

The proposed class satisfies the predominance requirement.

### 2.     A class action is superior to other methods of adjudication.

Not only do common questions predominate in the present litigation, but also as required by Rule 23(b)(3), a class action is the superior method by which to adjudicate this controversy.  "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 289 (E.D. Pa. 2003).  As the United States Supreme Court has

16

held, concerns of fairness and efficiency make a class action superior to hundreds of separate

individual trials:

> The policy at the very core of the class action mechanism is to overcome the problem
> that small recoveries do not provide the incentive for any individual to bring a solo
> action prosecuting his or her rights.   A class action solves this problem by
> aggregating the relatively paltry potential recoveries into something worth someone's
> (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

In the context of commercial practices affecting large groups of consumers, it is frequently

the unfortunate reality that there will be few cases filed compared to the number of injured parties

because of the relatively small size of individual claims.   The consumer class action is the most

beneficial device in such circumstances.   "Where it is not economically feasible to obtain relief

within the traditional framework of a multiplicity of small individual suits for damages, aggrieved

persons may be without any effective redress unless they may employ the class-action device."

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

Rule 23(b)(3) identifies four factors the Court must consider in determining superiority:

> (A) the interest of members of the class in individually controlling the prosecution
> or defense of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already commenced by or against members of the class; (C) the
> desirability or undesirability of concentrating the litigation of the claims in the
> particular forum; (D) the difficulties likely to be encountered in the management of
> a class action.

These factors support a finding of superiority here.

As to the first factor, the interests of the class members would not be furthered by their

having to undertake the prosecution of individual duplicative actions.   To the contrary, class

certification is in the best interest of the class due, among other things, to the expense of litigating

thousands of individual claims.   A class action is especially appropriate in cases like the instant one

in which relatively small damages affect large numbers of people.  It would not be economically feasible for the members of the proposed class to file and litigate individual lawsuits to recover damages that would not exceed $1000, *see* 15 U.S.C. § 1692k(a).  In the absence of class certification, the members of the class would be left without any realistic recourse for their injuries. *See, e.g.*, *Agan*, 222 F.R.D. at 701 (class is "superior method for resolving" FCDPA action "because it would be uneconomical to litigate these issues individually").  As the court stated in *Blarek*, in an FDCPA action:

> There are many plaintiffs with small claims for statutory damages, limited to between $100 and $1000. This nominal financial reward is unlikely to provide enough incentive to bring a solo suit. Even if $1000 is considered substantial, the unsophisticated consumers that the FDCPA was intended to protect are unlikely to be aware of their rights or be willing to subject themselves to the burdens of an individual lawsuit.

244 F.R.D. at 530; *see also Hunt*, 241 F.R.D. at 514 (noting that "individual consumers are most likely unaware of their rights under the FDCPA").

The second factor, the nature and extent of any existing litigation, also weighs in favor of the superiority of a class action.  The focus of the inquiry is on whether there is so much litigation in progress that certifying a class would be unproductive.  *Central Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 640 (D.S.C. 1992).  Neither Plaintiff's Counsel nor Counsel for RMS is aware of any other litigation regarding the issues raised in this case.

Third, "[c]oncentrating the litigation in this forum will achieve the primary objective of class actions – namely, achieving economies of time, effort, and expense, assuring uniformity and avoiding repetitive actions."  <u>Fabricant v. Sears Roebuck</u>, 202 F.R.D. 310, 318 (S.D. Fla. 2001).  "[C]lass action certifications to enforce compliance with consumer protection laws are desirable and should be encouraged."  *Hunt*, 241 F.R.D. at 514.

18

Finally, the Plaintiff anticipates no difficulties in the management of this litigation beyond those encountered in similar class actions involving alleged corporate wrongdoing.  The proposed class consists of Florida residents.  RMS does business in Florida.  *See* Compl. ¶ 5.  As discussed above, the issues of law and fact are overwhelmingly common in this case.  Manageability has already been demonstrated in the numerous FDCPA class actions that have been litigated in the Middle District and other federal courts.  This result is a testament to the fact that this litigation is a manifestly manageable class action.

In short, a class action is superior to any other method of resolving this litigation.

## <u>CONCLUSION</u>

For these reasons, the Plaintiff respectfully requests the Court to certify this case as a class action pursuant to Federal Rule of Civil Procedure on behalf of the class defined as follows:

> All residents of the State of Florida who received debt collection notices and/or letters from RMS relating to a consumer debt on or after March 14, 2006.[5]

It is further requested that Plaintiff be designated as representative of the Class and Plaintiff's Counsel be named Class Counsel.

---

[5]Excluded from the class are: any person employed by RMS or its parents, subsidiaries, or affiliates; any control person of RMS or its parents, subsidiaries, or affiliates; Class Counsel;  or any person who has a pending action for actual damages against RMS based on an alleged violation of the FDCPA or FCCPA.

Respectfully Submitted,

**SAXON, GILMORE, CARRAWAY,
GIBBONS, WILCOX & LASH, P.A.**
Fifth Third Plaza
201 E. Kennedy Blvd., Suite 600
Tampa, Florida 33602
Phone: (813) 314-4500
Facsimile: (813) 314-4555
*Co-Counsel for Plaintiff*
*Marcia Gaalswyck-Knetzke*

/s/ Damon M. Ellis
J. FRAZIER CARRAWAY, ESQ.
Florida Bar No. 0764541
fcarraway@saxongilmore.com
DAMON M. ELLIS, ESQ.
Florida Bar No. 0111864
dellis@saxongilmore.com

and

**KYNES, MARKMAN & FELMAN, P.A.**
100 S. Ashley Drive, Suite 1300
Tampa, Florida 33602
Phone: (813) 229-1118
Facsimile: (813) 221-6750
*Co-Counsel for Plaintiff*
*Marcia Gaalswyck-Knetzke*

/s/ Katherine Earle Yanes
JAMES E. FELMAN, ESQ.
Florida Bar No. 775568
jfelman@kmf-law.com
KATHERINE EARLE YANES, ESQ.
Florida Bar No. 0159727
kyanes@kmf-law.com

20

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on July 2, 2008, I electronically filed the foregoing with the

Clerk of the Court which will send a notice of electronic filing to:

> Ernest H. Kohlmyer, III, Esquire
> BELL, ROPER & KOHLMYER, P.A.
> 2707 East Jefferson Street
> Orlando, Florida 32803
> (407) 897-5150
> Skohlmyer@bellroperlaw.com
> *Attorneys for Defendant*
> *Receivable Management Services Corp.*

>   /s/ Katherine Earle Yanes     
> Katherine Earle Yanes, Esquire