UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARCIA GAALSWIJK-KNETZKE,
individually and on behalf of all others
similarly situated,

    Plaintiff,

v.                                      CASE NO: 8:08-cv-493-T-26TGW

THE RECEIVABLES MANAGEMENT
SERVICES CORPORATION,

    Defendant.
_____/

**O R D E R**

Before the Court is Plaintiff's Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23 (Dkt. 17), including attachments such as the Joint Stipulation (Dkt. 17, Exh. A), and Defendant's Response in Opposition and affidavit. (Dkt. 19). After careful consideration of the motion and the file, the Court concludes that the motion should be granted.

**BACKGROUND**

In this action, Plaintiff seeks relief against The Receivables Management Services Corporation (RMS) for a claim of entitlement to statutory damages under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (FDCPA), the Florida Consumer Collection Practices Act, section 559.55, et seq., Florida Statutes, (FCCPA), and punitive damages under the FCCPA. The gravamen of the class action complaint attacks the form

of collection letters sent by RMS as to both language and legibility. Plaintiff claims the letters were sent to over 16,000 individuals; however, the Manager of Compliance of Defendant avers that the letters were sent to over 156,000 Florida consumers.[1] Plaintiff seeks to certify the following class:

> All residents of the State of Florida who received debt collection notices and/or letters from RMS relating to a consumer debt on or after March 14, 2006.

## APPLICABLE LAW

To certify a class pursuant to Rule 23, the Court must first determine whether the class representative possesses standing the assert his or her own claim. See Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1022 (11th Cir. 1996). Once standing is established, the four prerequisites of subsection (a) must be met by the Plaintiff: (1) numerosity such that the joinder of all class members would be impracticable; (2) commonality among the class of questions of law or fact; (3) typicality of the claims between the class representative and the members of the class; and (4) adequate representation by the class representative as well as his or her attorneys. This Court must conduct a "rigorous analysis" of the prerequisites of Rule 23(a). See General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

In addition to meeting all four of the requirements of subsection (a), in this case, the action must also fit into one of the categories of subsection (b). Rule 23(b)(3) requires predominance of group issues over questions affecting only individuals, and the

---

[1] See docket 19, Exh. A—Affidavit of Maryann Cantor.

superiority of the class action over individual actions to efficiently and fairly adjudicate the controversy. Four factors to satisfy Rule 23(b)(3), which are not exhaustive, include (1) the class members' interests in prosecuting their case individually, (2) the extent and nature of already-started litigation by class members, (3) the desirability of concentrating the litigation in this particular forum, and (4) the potential difficulties in managing a class action. See Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 615-16, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997).

## ARGUMENT

The parties stipulate that the numerosity[2] and commonality elements have been satisfied. Defendant objects to certification on the grounds that the proposed class will be too numerous, over 156,000 individuals, and will defeat the superiority of the class action method under Rule 23(b)(3). Moreover, Defendant argues, individualized inquiry will be necessary to ascertain which class members may or may not have understood the meaning of the preamble on the back of the collection letter under the standard of Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985). Defendant asserts that the standard for § 1692d(6) claims is slightly different from the "least sophisticated consumer" standard applicable under § 1692e(11) claims, and, therefore, will require an individual analysis, making this action unsuitable for class treatment.

---

[2] Defendant, however, did not "waive its right to claim that excessiveness of the number of potential class members may defeat class certification." (Dkt. 17, Exh. A—Joint Stipulation).

3

**CLASS ACTION ANALYSIS**

To determine whether a class should be certified in this case, the Court must not decide the merits of the claim.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974); Cooper v. Southern Co., 390 F.3d 695 (11th Cir. 2004) (citing Eisen and reiterating Eleventh Circuit's prior holding that principle of not reaching merits on class determination "should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements.").  After confirming the existence of standing, each of the four elements of Rule 23(a) will be examined, and then Rule 23(b)(3), which is the prong Plaintiffs seeks to establish, will be addressed.

**Standing**

The Court is unaware of any legal or factual basis destroying standing of the named Plaintiff in this action.  There is no question that she received three collection letters in the forms as alleged.[3]  Defendant has not raised any deficiency in the class representative's standing, and absent any unforeseen basis, the Court finds that the named plaintiff has standing to assert her claims, as well as the claims of the other class members.

---

[3] See docket 1 at para. 19.

**Numerosity**

In cases seeking relief for conduct involving form collection letters alleged to violate the FDCPA and FCCPA, certification of a class action is not unusual.  See, e.g., Agan v. Katzman & Korr, P.A., 222 F.R.D. 692 (S.D. Fla. 2004); Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697 (M.D. Fla. 2000); Swanson v. Mid Am, Inc., 186 F.R.D. 665, 666-69 (M.D. Fla. 1999).[4]  Plaintiff alleges that at least 16,000 letters were sent by Defendant, and Defendant avers that, in fact, over 156,000 consumers are members of the proposed class.  Thus, there is no question that the number of recipients is so numerous that joinder of all class members is impracticable.  Hence, this Court agrees with the parties' stipulation that the numerosity requirement is satisfied.  Other considerations under subsection (b)(3) directed to manageability in view of the potentially vast class size will be discussed later in this order.

**Commonality**

Common questions of law or fact must exist among the class members.  Commonality pertains to the characteristics of the group or class as a whole, unlike typicality which refers to the individual characteristics of the class representative as compared to those of the class members.  See Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (citing Prado-Steiman v. Bush, 221 F.3d 1279 (11th Cir. 2000)).

---

[4] But see Jones v. Roy, 202 F.R.D. 658 (M.D. Ala. 2001) (denying class certification in FDCPA action based on class representative's claim not being typical of other class members' claims because class representative's letter differed from letters sent to other thousands of class members).  In the instant case, all the letters are identical or substantially similar.

The Court agrees with the stipulation of the parties that commonality has been met in the sharing of the common questions of law or fact among the various class members. All received the identical or substantially similar letter from Defendant.

## Typicality

The proof of typicality and commonality often "tend to merge." See Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 1270 n. 13; Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 456 (11th Cir. 1996). The two "represent the 'nexus' necessary between the class representatives and class members." Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 n. 8 (11th Cir. 1992). While Defendant stipulates that commonality is met, it does not stipulate to the prerequisite of typicality, nor does it address this prong in its response in opposition. "Typicality . . . does not require identical claims or defenses," but only that the "claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984). Moreover, any variation in the factual content between the class representative's claim and the class members' claims will not defeat typicality unless the factual claim of the representative "markedly differs" from those of the other class members. Id. Because the same or substantially similar letter was sent to all class members as well as the class representative, the Court finds that typicality has been satisfied.

**Adequate Representation**

To fulfill the adequacy of representation prerequisite, the class representative must not possess interests contrary to the other class members, i.e., no conflicts of interest, and the class representative and his or her attorneys must be qualified and experienced so that they will vigorously prosecute the action.  See Valley Drug Co. v. Geneva Pharm, Inc., 350 F.3d 1181, 1189 (11th Cir. 2003); Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000).[5]  In this case, Defendant objects to the adequacy of the Plaintiff's choice of counsel, specifically the Saxon Gilmore firm and the Kynes Markman firm. Defendant raises inexperience in class action cases as its main criticism of their competency to manage the conduct of this case.  Based on the materials provided by Plaintiff, however, the Court finds that these two firms are well qualified to vigorously pursue this action.

Much can be gleaned from the resumes attached to Plaintiff's motion.[6]  All three attorneys in the Kynes Markman firm excelled in their studies before becoming attorneys as well as mastered their endeavors after admission to the bar.  The resumes reveal that three of the attorneys possess extensive experience in successfully prosecuting class actions, many of which are listed and involve consumer litigation.  Three of the attorneys in the Saxon Gilmore firm practice consumer litigation as a major component of their

---

[5] See also Grimes v. Fairfield Resorts, Inc., No. 06-14363, 2007 WL 245128 (11th Cir. Jan. 30, 2007) (unpublished opinion) (citing Valley Drug).

[6] See docket 17 at Exh. B—Resumes of attorneys.

7

business, and one touts particularized experience in litigating claims under the FDCPA and the FCCPA. Although the descriptive phrase "class action" is not present in the resumes of the Saxon Gilmore firm, it is clear from the nature of its practice that the attorneys either have handled or are quite capable of handling class actions involving consumer law. As far as the financial commitment to support the class, the attorneys in the firms have obviously weathered many years of protracted cases in the Tampa area, and the Kynes Markman firm has been in existence for at least twenty years and has successfully managed its business and cases as meted out by the firm's resume. Thus, Defendant's attempt to take exception with the caliber and qualifications of Plaintiff's attorneys falls short of its goal. Accordingly, the Court finds Plaintiff's counsel qualified and more than adequate to represent the interests of a class.

### Predominance under Rule 23(b)(3)

Predominance means that the issues in a class action must be capable of generalized proof such that the issues of the class "predominate over those issues that are subject only to individualized proof." Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997) (quoting Kerr v. City of West Palm Beach, 875 F.2d 1546, 1557-58 (11th Cir. 1989)). The predominance requirement under Rule 23(b)(3) is "far more demanding than Rule 23(a)'s commonality requirement." Jackson, 130 F.3d at 1005. The existence of some individual questions, however, will not nullify the predominance of issues common to the group as a whole. Agan, 222 F.R.D. at 701 (quoting Brown v. SCI Funeral Servs. of Fla., Inc., 212 F.R.D. 602, 606 (S.D. Fla. 2003)).

Applying this standard to the action, the Court finds that all of the claims of the named Plaintiff and the class members are based on the same legal theories, the same form collection letters, and the same remedy—statutory damages. In accord with the court in Agan, the common issues raised by sending the same form collection letters predominate over any individual issues. Agan, 222 F.R.D. at 701.

### Superiority of Class Action

Defendant takes great issue with this last requirement under Rule 23(b)(3)---- superiority of the class action as a means of conducting the litigation as opposed to the class members filing individual actions. Defendant asserts that (1) a class recovery would be *de minimus*, recovering only $3.20 per individual[7] for the over 156,000 individuals who received the form collection letters, and (2) permitting Plaintiff to proceed with this class action constitutes an abuse of the statute and will result in a windfall to the attorneys who steer the litigation. For the following reasons, the Court finds, in its discretion, that in this case, the Plaintiff has met her burden of establishing that a class action is the superior method of resolving the claims.

The courts addressing *de minimus* recovery in class actions from various jurisdictions do not lend themselves to reconciliation. Some courts hold that a *de minimus* recovery constitutes a ground for denial of class certification. See, e.g., Leyse v. Corporate Collection Servs., Inc., No. 03 Civ. 8491(DAB), 2006 WL 2708451, at *9 n. 5

---

[7] Defendant arrived at this figure based on an assumed net worth of $500,000 and the 156,000 individuals. Under the FDCPA and FCCPA, class statutory damages are capped at $500,000. 15 U.S.C. § 1692k(a)(2)(B); Fla. Stat. § 559.77(2).

(S.D.N.Y. Sept. 18, 2006) (noting that even if numerosity had been met, defendant with low net worth would provide only 51 cents per class member for class action of 11,000); Jones v. CBE Group, Inc., 215 F.R.D. 558, 569-570 (D. Minn. 2002) (holding that class recovery would be *de minimus* based on defendant's net worth and FDCPA provides incentive in the form of attorney's fees in individual cases); Granish v. Check Enforcement Unit, Inc., 209 F.R.D. 392, 393-94 (W.D. Mich. 2002) (holding that *de minimus* recovery of 6 cents per class member in view of defendant's net worth warranted decertification of class); Lyles v. Rosenfeld Attorney Network, No. 199CV322-D-A, 2000 WL 798824, at *6 (N.D. Miss. May 17, 2000) (holding that maximum individual class member recovery of $18.68 as opposed to $1,298.78 possible recovery if brought as individual suit, made class recovery *de minimus* and therefore not superior method).[8] Other courts, including ones within this jurisdiction, do not embrace a strict application of the *de minimus* rule. See, e.g., Agan, 222 F.R.D. at 701 (certifying class action under Rule 23(b)(3) for FDCPA and FCCPA, stating issues would be uneconomical to litigate individually); Blarek v. Encore Receivable Mgmt., Inc., 244 F.R.D. 525, 530 (E.D. Wis. 2007) (holding that although FDCPA allows individual recovery of up to $1,000, this fact alone does not account for plaintiff's reticence to find attorney even if aware of her rights); Hunt v. Check Recovery Sys., Inc., 241 F.R.D. 505, 514 (N.D. Cal. 2007) (holding that FDCPA provides for and contemplates class action relief and recovery is

---

[8] See also Fainbrun v. Southwest Credit Sys., L.P., No. CV-05-4364, 2008 WL 750550, at *1 (E.D. N.Y. Mar. 18, 2008) (citing these cases as recognizing *de minimus* recovery acts as ground to deny class certification).

generally so small that little incentive exists to sue individually); Kalish v. Karp & Kalamotousakis, LLP, 246 F.R.D. 461 (S.D. N.Y. 2007) (granting class certification under FDCPA, noting that language in Leyse promoting application of *de minimus* rule was dicta and "is hardly the ringing endorsement Defendant portrays it to be); Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 700-01 (M.D. Fla. 2000) (finding class action as superior method under FDCPA and FCCPA without specifically ruling on *de minimus* aspect).[9] The clear import of these cases dictates that each case must decided on its own facts and circumstances.[10]

A central assumption to the foundation underlying the *de minimus* rule is that an individual will pursue his or her legal rights based on a violation of the FDCPA or FCCPA. This premise is founded on the foregone conclusion that a potential individual plaintiff knows that a given collection letter violates the law, or at least possesses sufficient interest to investigate the legality of the letter. If the individual plaintiff

---

[9] See also Ramirez v. Palisades Collection LLC, No. 07 C 3840, 2008 WL 835694, at * 8-9 (N.D. Ill. Mar. 28, 2008) (granting certification of class under FDCPA and finding that superiority requirement was met because individual suits were economically unfeasible, class members are likely to be unaware of rights, and Congress intended class actions to be principal means of enforcement of FDCPA)

[10] Defendant cites Shroder v. Suburban Coastal Corp., 729 F.2d 1371 (11th Cir. 1984), for the proposition that technical violations of the FDCPA involving no actual damages should not proceed as class actions. In Shroder, a case involving the Truth-in-Lending Act, the court held that when the requirements of Rule 23(a) have been met, the district courts should not deny class certification unless the case involves only technical violations *and* the district believes that the exercise of discretion warrants against certification. Id. at 1377-78. What constitutes "technical" may vary from case to case, however, and this Court finds a class action the superior means of litigating the issues.

recognizes or discovers a violation, then it is also expected that such discovery will spur the pursuit and hiring of an attorney to file and litigate the action. Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits.[11] On the contrary, Congress provided for class actions as a means for recovery to "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action." Amchem, 521 U.S. at 617 (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)). Based on the intent of the FDCPA and all the various scenarios for recovery,[12] this Court finds that the chance of a *de minimus* recovery should not defeat class certification in this case.[13]

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)  Plaintiff's Motion for Class Certification (Dkt. 17) is **GRANTED**.

---

[11] See 15 U.S.C. § 1692k(a)(2)(B) (providing for recovery in class actions).

[12] See Barkouras v. Hecker, No. 06-0366 (AET), 2006 WL 3522585, at *4 (D. N.J. Dec. 8, 2006) (unpublished opinion) (discussing the numerous outcomes possible if individuals rather than class prosecuted violations of FDCPA, for example, several individuals could proceed until defendant rendered insolvent from numerous $1,000 judgments).

[13] Even though Defendant alerts this Court to the potential misuse of the class action as a method of padding the class members' attorneys' pockets rather than benefitting the individual class members who brought the action with a recovery less than the $1,000 possible under the FDCPA, there is no evidence of such misuse. In Berther v. TSYS Total Debt Mgmt. Inc., No. 06-C-293, 2007 WL 1795472 (E.D. Wis. June 19, 2007), cited by Defendant, the Court did not deny certification but discussed the potential for a class action to serve as a means of extracting a settlement from a defendant wary of paying even higher attorneys' fees should the class action litigation continue for any length of time. Id. at *4.

(2) The law firms of Saxon, Gilmore, Carraway, Gibbons, Wilcox & Lash, P.A. and Kynes, Markman & Felman, P.A., are appointed class counsel.

(3) The following class is hereby certified:

All residents of the State of Florida who received debt collection notices and/or letters from RMS relating to a consumer debt on or after March 14, 2006.

(4) Plaintiff's counsel and Defendant's counsel are directed to confer in a good faith effort to agree on the language of the notice required to be sent to the class pursuant of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and shall file the agreed upon notice with the Court on or before September 4, 2008. In the event counsel are unable to agree on the language of the notice, they shall file their version of the notice with the Court on or before September 4, 2008.

**DONE AND ORDERED** at Tampa, Florida, on August 14, 2008.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record