**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**MARCIA GAALSWYCK-KNETZKE,
individually and on behalf of all
others similarly situated,**

      **Plaintiff,**

**v.**                              **CASE NO. 8:08-cv-493-T-26TGW**

**THE RECEIVABLES MANAGEMENT
SERVICES CORPORATION,
a Delaware corporation**
_____/

<u>**MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT
AND PETITION FOR ATTORNEYS' FEES, EXPENSES, AND AWARD TO CLASS
REPRESENTATIVE AND SUPPORTING MEMORANDUM**</u>

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff MARCIA GAALSWYCK-KNETZKE ("Class Representative"), individually and on behalf of all others similarly situated (the "Class"), respectfully moves the Court for an Order (1) granting final approval of the settlement of this action embodied in the Settlement Agreement between Plaintiff and Defendant, THE RECEIVABLES MANAGEMENT CORPORATION ("RMS"), dated March 26, 2009, and (2) granting Class Counsel's petition for attorneys' fees and expenses and an award to the Class Representative, in accordance with the terms of the Settlement Agreement. A copy of the Settlement Agreement, (the "Settlement Agreement," "Settlement," or "Agreement"), is attached as Exhibit 1. The proposed Final Order in the form agreed to by the parties pursuant to the Settlement Agreement is attached as Exhibit 2. The grounds supporting this motion are set forth in the following Memorandum.

1

**MEMORANDUM**

**I.      History of the litigation, settlement negotiations, and the Settlement Agreement**

    **A.      Introduction**

This case is a class action on behalf of hundreds of thousands of individuals who received collection letters from RMS that Plaintiff alleged violated the Fair Debt Collection Practices Act ("FDCPA") and/or the Florida Consumer Collection Practices Act ("FCCPA"). Plaintiff alleged the language of the required validation notices contained in the collection letters RMS sent out was misleading and confusing to the "least sophisticated consumer" and was printed in a manner that was difficult to read.

Plaintiff is pleased to submit to the Court a settlement agreement that is fair, adequate, and reasonable and is the product of good faith, arm's-length negotiations between the parties.  After rigorous advocacy and negotiation, the parties have agreed on a settlement that achieves both equitable relief and a sizeable *cy pres* contribution to the Hillsborough County Bar Foundation on behalf of the Class.

    **B.      The litigation and settlement negotiations**

The history of this litigation, the process by which the parties reached the Settlement Agreement, and the issues the parties dealt with in settling this matter are discussed in detail in the Affidavit of Katherine Earle Yanes, one of the Class Counsel, which is attached at Exhibit 3.

Plaintiff filed this action in March 2008.  Doc. 1.  Shortly thereafter, RMS moved to dismiss the Complaint, Doc. 8, to which Plaintiff responded.  Doc. 12.  After the Court entered an Order denying RMS's motion to dismiss, Doc. 13, RMS answered.  Doc. 14.

2

Beginning in May 2008, and continuing until the parties finalized the Settlement Agreement, the parties actively engaged in formal and informal discovery regarding both class certification issues and the merits of Plaintiff's claims.

Plaintiff filed a motion for class certification, Doc. 17, which RMS opposed, Doc. 19. The Court granted Plaintiff's motion and certified the following class:

> All residents of the State of Florida who received debt collection notices and/or letters from RMS relating to a consumer debt on or after March 14, 2006.

Doc. 20 at 13.  The Court appointed the law firms of undersigned counsel as Class Counsel. Doc. 20 at 13.

Following class certification, the parties agreed that mediation of the case was appropriate.  The parties held an in-person mediation conducted by C. Lawrence Stagg, Esquire, on October 17, 2008.  The parties' efforts to resolve the case were complicated by the facts that the class in this case is extraordinarily large and that the FDCPA imposes a $500,000 statutory cap on damages.  Ex. 3 ¶ 13-19.  Although the parties were unable to settle the case during the initial in-person mediation, following the mediation, the parties engaged in an on-going dialogue to work through the issues in the case.  Ex. 3 ¶ 12. Ultimately, the parties reached an agreement in principle as to all of the issues in the case other than the manner in which notice was to be provided to the class.  Ex. 3 ¶ 19.  The parties sought the Court's guidance in that regard, Doc. 43, 47, 48, which the Court provided in a status conference held on February 27, 2009.

Following the status conference, the parties drafted a final Settlement Agreement, joint motion for preliminary approval of the settlement, and proposed class notice.  The

parties moved for preliminary approval of the settlement agreement and approval of a proposed class notice, Doc. 53, which the Court granted, Doc. 54.

### C.     Summary of the Settlement

After serious, informed, and non-collusive negotiations, the parties have written an agreement that both sides find fair, adequate and reasonable.  The parties agreed to settle this action on a Florida class-wide basis.  The essential terms of the settlement are set out in the Settlement Agreement attached as Exhibit 1 and are described below:

**$50,000 *cy pres* distribution:**  Within ten days of the Effective Date of the Settlement − defined as the date on which the Settlement Agreement is approved by the Court and the time to take an appeal has expired and no appeal has been taken, or any appeal has been dismissed, or the approval of the settlement has been affirmed, Settlement Agreement, Ex. 1, at ¶ 1.11 − Defendant will pay to the Hillsborough County Bar Foundation as a *cy pres* distribution on behalf of the Class the total sum of $50,000.00.  *Id.* at ¶ 2.3A.  The *cy pres* award to the Hillsborough County Bar Foundation will serve the interests of the Class, as well as Florida consumers as a whole, and is consistent with the spirit of consumer education and protection in which the FDCPA was enacted.  The stated mission of the Hillsborough County Bar Foundation is, "To support and promote programs and projects which encourage assistance to the poor and disadvantaged, primarily with regard to their legal needs and to educate the public about the legal system."  As set forth on the website of the Hillsborough County Bar Foundation, some of the means by which the Foundation furthers this mission are the following:

● To support and promote programs and projects for the improvement of

4

the administration of justice and the dissemination of information to the general public to promote a better understanding of the law;

- To encourage and promote legal assistance to the poor and to disadvantaged groups; and

- To foster programs of law related education for students and adults.

http://www.hillsbar.com/Hillsborough%20County%20Bar%20Foundation/AboutUs.aspx.

**Equitable Relief:**  Defendant will provide substantial equitable relief to Class members throughout the state of Florida.  Prior to the date the parties entered into the Settlement Agreement, Defendant had already voluntarily corrected the issue this lawsuit raised regarding the legibility of its collection notices.  Defendant also agreed pursuant to the Settlement Agreement to modify the validation notice in its debt collection letters to address the language this lawsuit alleged was confusing and misleading.  Settlement Agreement, Ex. 1, at ¶ 2.3.B.  Defendant provided to Class Counsel the proposed modified language, which Class Counsel reviewed.  Ex. 3 ¶ 21.  Class Counsel provided Defendant with their opinion that the validation notice as modified complies with the FDCPA.  *Id.*  The parties entered into a stipulation that was filed with the Court reflecting the mutually agreed-upon modifications to the language of RMS's validation notice.  Doc. 56.  The parties further agreed that the stipulation will be incorporated into the Settlement Agreement.  RMS implemented the modified language, and as of April 20, 2009, all of RMS's collection letters contain the validation notice approved by Class Counsel.  *See* Affidavit of RMS Vice President Michael Kronenfeld, attached as Exhibit 4.  RMS's agreement to conform its policy to Plaintiffs' position regarding the requirements of the law eliminates the need for further litigation and represents a major victory for the Class and for Florida consumers.

**Class Notice and Settlement Administration:**   Defendant agreed to bear the costs of providing notice to the class and administering the Settlement Agreement.   Settlement Agreement, Ex. 1, at ¶ 2.3.D.

**Class Representative Award:**  Defendant agreed to pay Plaintiff the amount of $2,000.00 in consideration of Plaintiff's service to the Class.  Settlement Agreement, Ex. 1, at ¶ 2.3.C.

**Attorney Fees and Costs:**   Defendant agreed to pay Class Counsel their reasonable attorney's fees, costs, and expenses, in an amount up to $125,000, as approved by the Court. Settlement Agreement, Ex. 1, at ¶ 2.3.E.

***

The Settlement eliminates the inherent risk the parties would have to take and high cost in time and money that the parties would have to expend if the litigation were to go forward.  Defendants are not admitting any liability or that they did anything wrong and are released and forever discharged from any future claims by the Plaintiffs and Settlement Class.  *See* Settlement Agreement, Ex. 1, at ¶¶ 2.4, 2.8.  The Plaintiff and the Class avoid the risk that Class members might not recover anything if this case were litigated to a conclusion – which, as a result of the class size and damages cap, could occur even if the Class prevails as to all of its claims.

In sum, the parties have agreed to a Settlement that both sides find mutually beneficial and fair, and the parties therefore seek final judicial approval of its terms.

**D.     Notice to the Class**

As noted above, the parties sought guidance from the Court regarding the appropriate form of notice to the Class.  The parties recognized that because of the size of the Class and

the existence of the statutory damages cap, the cost of providing individual notice by first class mail to all class members was prohibitive.  Based on this economic reality, the Court made a finding that the best notice practicable under the circumstances of this case was notice by publication.  In holding that publication notice is the best notice practicable under the circumstances of this case, the Court relied in part on Judge Bucklew's ruling in *Buchman v. Bray & Lunsford, P.A.*, Case No. 8:07-cv-01752-SCB-MSS, Doc. 48 Ex. 1, approving publication notice.

The Court also provided input regarding the appropriate publication in which the notice would be provided, that is, the two regional USA Today newspapers that are distributed in Florida.  Accordingly, the parties agreed to publication notice in those newspapers.  Settlement Agreement, Ex. 1, at ¶ 2.1.  The Class Notice approved by the Court was published in the North Florida and South Florida regional editions of the USA Today newspaper on April 21, 2009.  Doc. 57.

### E.   Objections and Opt-Outs

The members of the Class were provided notice that they had until June 19, 2009, to file any objections to the proposed settlement or to opt out of the settlement.  Doc. 57.  As of the date of this filing, more than a week after the deadline to object or opt out, no class member had filed an objection or elected to opt out of the Settlement.

### II.   The Settlement satisfies the standards for judicial approval of class action settlements.

The parties respectfully submit that the Court should approve the Settlement Agreement.  The Settlement provides substantial benefits to the Class and is fair, reasonable,

and adequate in light of the relevant facts, the applicable law, and the potential value of the settlement to the Class.  Notably, the Settlement is similar in structure to the settlement in the FDCPA class action *Buchman v. Bray & Lunsford* that was recently approved by Judge Bucklew, *see* Doc. 48 Ex. 1, and provides a significantly larger *cy pres* contribution than was obtained in *Buchman v. Bray & Lunsford.*

## A.    The Legal Standard for Final Approval of a Settlement.

Federal Rule of Civil Procedure 23(e) provides as follows:

Settlement, Voluntary Dismissal, or Compromise.    The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval.

While Rule 23(e) requires judicial approval of class action settlements, it does not provide any standards for such approval.  *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988).  Rather, the approval of a proposed class action settlement is within the discretion of the trial court. *Bennett,* 737 F.2d at 986.

In exercising its discretion, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements."  *Behrens,* 118 F.R.D. at 538; *Cotton*, 559 F.2d at 1331 ("Litigants should be encouraged to determine their respective rights between themselves.").  This is especially true in the case of class actions given their inherent uncertainty, difficulties in proof, and length.  *Cotton*, 559 F.2d at 1331; *Behrens*, 118 F.R.D. at 538.  Furthermore, the settlement of complex cases conserves scarce judicial resources and resolves disputes more quickly.  *Cotton*, 559 F.2d at 1331; *Behrens*, 118

F.R.D. at 538; *see also In re United States Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Complex litigation . . . can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.").

While the Court should carefully review the settlement, the Court may not try the case on the merits. *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *Cotton*, 559 F.2d at 1326; *Behrens*, 118 F.R.D. at 539. In the absence of fraud, the Court is encouraged to rely on the judgment of experienced counsel and "should be hesitant to substitute [its] own judgment for that of counsel." *In re Smith*, 926 F.2d at 1028; *Behrens*, 118 F.R.D. at 539 (citation omitted). The Court is only authorized to grant or deny final approval and may not alter the settlement as it sees fit. *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986); *Brooks v. Georgia State Board of Elections*, 59 F.3d 1114, 1119 (11th Cir. 1995); *see also Cotton*, 559 F.2d at 1331-32 ("We are not free to delete, modify or substitute certain provisions of the settlement. The settlement must stand or fall as a whole.").

The "cardinal rule" in approving a settlement is that the trial court must find that the settlement meets two criteria. First, the settlement must not be "the product of collusion between the parties." *Bennett*, 737 F.2d at 986; *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Strube*, 226 F.R.D. at 697. Second, the settlement must be "fair, adequate and reasonable." *Bennett,* 737 F.2d at 986; *Cotton*, 559 F.2d at 1330; *Strube*, 226 F.R.D. at 697. When determining whether a settlement is fair, adequate and reasonable, the following factors should be considered:

(1)     the likelihood of success;

(2)   the range of possible recovery;

(3)   the point on or below the range of possible recovery at which a
      settlement is fair, adequate and reasonable;

(4)   the complexity, expense and duration of litigation;

(5)   the substance and amount of opposition to the settlement; and

(6)   the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.  Class Counsel submit that an analysis of these factors weighs in favor of approval of the Settlement by the Court.

**B.   The Settlement Meets the Criteria for Final Approval.**

  **1.   There Was No Fraud or Collusion Between the Parties or Their Attorneys.**

There is no question that in arriving at the terms of the Settlement, the parties and their attorneys engaged in non-collusive, arms-length negotiations.  The non-collusive nature of the settlement negotiations has been attested to by Class Counsel.  Ex. 3 ¶¶ 11-12.  As the Court found in granting class certification, Class Counsel are well-qualified and experienced class action and trial attorneys.  Doc. 20 at 7-8.  Class Counsel have zealously pursued the interests of their clients throughout the course of this litigation.  Once settlement negotiations began, the parties held a day-long mediation, engaged in numerous telephone calls, and exchanged multiple proposals and counter-proposals before ultimately reaching a settlement.  Ex. 3 at ¶ 12.  Throughout this process, Class Counsel engaged Defendant's counsel in an extended dialogue on a variety of issues, which ultimately led to the Settlement Agreement.  *Id.*  There is absolutely no indicia of fraud or collusion in the parties' agreeing to the Settlement and the negotiations were conducted in good faith by arms-length negotiations.

    **2.**       **The Settlement is Fair, Adequate, and Reasonable.**

        **a.**       **While Plaintiffs May be Likely to Succeed on the Merits at Trial, There Are Significant Risks, Making Settlement Preferable.**

The most important factor the Court must consider in its assessment of the fairness and adequacy of the settlement is the likelihood and extent of any recovery absent a settlement. *In re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. 297, 314 (N.D. Ga. 1993). The Court, however, need not and may not reach any ultimate conclusions on unsettled issues of law and fact underlying the dispute and should defer to counsel's judgment in the absence of fraud or collusion. *Id*. at 315. While the Court must consider the probability of Plaintiff's success on the merits, the Court must also realize that compromise is the essence of settlement and that the ultimate purpose of settlement is to avoid such final adjudications. *Bennett*, 737 F.2d at 986.

Class Counsel have investigated the facts and applicable law regarding the Class's claims and Defendant's potential defenses and have concluded that the proposed Settlement is an excellent result relative to the risk inherent in this litigation. While Class Counsel believe the likelihood of Plaintiff's success on the merits is high, there are real risks should the case go to trial.

On the one hand, Plaintiffs and the Class believe that the case is strong and that their claims are meritorious. As discussed above, the Complaint survived a motion to dismiss and Class Counsel were prepared to support Plaintiff's claims that RMS's collection notices were misleading and confusing to the least sophisticated consumer with expert testimony at trial.

11

Ex. 3 ¶ 10.  On the other hand, RMS does not admit liability or wrongdoing and contends that Plaintiff's case is meritless, and stated its intention to pursue a summary judgment motion and vigorously defend the case at trial.  Further, there is no prior case addressing the precise language Plaintiff alleged was misleading and confusing.  There also existed the danger that even if Plaintiff and the Class prevailed at trial, the Defendant could decide to appeal, and the appeal would have an uncertain outcome.  In sum, given the real risk that the Plaintiffs may not prevail if this case were to go to trial, this Settlement represents a fair, adequate, and reasonable compromise.

> **b.      The Settlement Amount Falls Well Within the Range of Possible Recovery at Which the Settlement is Fair, Adequate and Reasonable.**

The court must consider the range of possible damages the Class Representatives and Class could recover at trial and determine whether the settlement falls within the range that is fair to the class.  *In re Domestic Air Transp.*, 148 F.R.D. at 319.  This case presents the unusual situation in which litigating the case at trial would almost certainly reduce the recovery to the class, and in fact would likely eliminate any possible class recovery.  A recent district court opinion approving a settlement in an FDCPA class action case held that settlement was appropriate in part because:

> Absent a settlement, the costs incurred by continuing this litigation would likely outweigh any potential recovery.  The delay inherent in further litigation would also reduce the value of any potential recovery.  On the other hand, the settlement provides certain compensation to the class members now rather than awaiting an eventual resolution that would result in further expense without any definite benefit.

*Aramburu v. Healthcare Financial Servs., Inc.*, 2009 WL 1086938, at \*3 (E.D.N.Y. Apr. 22, 2009) (citation omitted).

As noted, the FDCPA imposes a $500,000 statutory damages cap, regardless of the size of the class.  15 U.S.C. § 1692k(a)(2)(B).  Had the case not settled, Class Counsel were preparing to provide notice to the Class of class certification, at an estimated cost of approximately $145,000.  Ex. 3 ¶ 15.  Had Plaintiff prevailed at trial, a second notice to the Class would have been required.  Because RMS continued to use the disputed validation notice until it agreed pursuant to the Settlement Agreement to cease doing so, the size of the Class would have continued to grow as the case proceeded to trial, with the result that the cost of class notification post-trial would have been even higher.  Further, taking the case to trial would have entailed expert witness and other costs that would also have reduced the Class's potential recovery.  Given the large class size and the statutory limits on the Class's potential recovery, the cost of distributing to the Class any amount left over after the notice and other costs were reimbursed would almost certainly have exceeded the amount available to be distributed.

Class Counsel did not believe it to be in the interests of the Class to pursue an illusory recovery when RMS was willing to agree to a settlement that would require it to stop using the validation notice that Plaintiff alleged is unlawful.  Further, under the terms of the Settlement, RMS will make a *cy pres* contribution to the Hillsborough County Bar Foundation that likely far exceeds the amount the Class could realistically recover if the case were litigated.  For that reason, the Court should find that the settlement amount is within the range of possible recovery at which the Settlement is fair, adequate, and reasonable.

In *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138, at *4, *6-7 (E.D.N.Y. Dec. 11, 2006), the district court approved a settlement that, like this one, provided for equitable relief and a *cy pres* payment to a legal aid society.  The district court noted that if that case had gone to trial, the class size and damages cap would have combined to make the recovery "de minimus," and held that "given the small amount of damages available in this type of case, the benefits of immediate recovery outweigh the risks associated with future litigation."  *Id.* at *6-7.  Similarly, the district court in *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105, 117-18 (E.D. Pa. 2005), approved a settlement that did not provide a monetary award to class members but included a *cy pres* contribution to a legal assistance project.  The court stated:

> This litigation seeks to remedy a problem that does not lend itself to large money damages; without the tool of class action litigation this problem might go unaddressed.  Still, the dearth of money damages available for individual class members leads to potential distribution problems, and could easily become an obstacle to settlement. . . . .  Therefore, a *cy pres* distribution, as part of the overall settlement, is a creative and useful means of achieving a fair and reasonable resolution.

Id. at 118.

### c.    The Complexity, Expense, and Duration of Litigation Favor Settlement.

While this case does not present unusually complex legal issues, the expense and likely duration of this case support settlement.  Plaintiff initially brought this case over a year ago.  In the absence of a settlement, this case would likely have continued for another nine months to a year in this Court, and perhaps additional time in the Court of Appeals, consuming considerable time and resources on the part of counsel and the court system.  As

discussed above, the expense of these proceedings would likely deprive the Class of any possible recovery.  Additionally, prolonging the proceedings would have resulted in RMS continuing to use to disputed validation notice, further increasing the number of Class members who were potentially misled or confused by it.

> ### d.     There Has Been No Opposition to the Settlement, Thus Weighing in Favor of its Approval.

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Aramburu*, 2009 WL 1086938, at *4.  "Generally, if the class members do not oppose the class settlement, the court is justified in concluding that they consider it fair and reasonable." *Lachance v. Harrington*, 965 F. Supp. 630, 645 (E.D. Pa. 1997); *see also Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105, 114 (E.D. Pa. 2005) ("Silence from the class is generally presumed to indicate agreement with the settlement terms.").

No objections to the Settlement have been received, thereby making the Settlement appropriate for final approval.  Following the Court's Order dated March 27, 2009, Defendants caused publication notice to be disseminated to the Class, pursuant to the terms of the Settlement Agreement.  Doc. 57.  The notice provided Class members with the terms of the proposed Settlement, the means by which they may opt out or oppose the Settlement, the dates by which such actions must be taken, and the date of the Fairness Hearing.  Doc. 57.

There are over 263,000 members of the class.  To date, the parties have received no objections to the proposed Settlement and no notices of class members choosing to opt out of

the settlement, thereby making the number of dissatisfied class members nil.  The lack of any

opposition from the Class thus strongly supports approval of the Settlement.

> **e.  The Stage of the Proceedings Provides the Parties and the Court with Ample Basis to Evaluate the Settlement.**

The Settlement is the product of significant litigation, including discovery by both

parties, a motion to dismiss, and a motion for class certification.  Where the parties arrive at a

settlement only after engaging in discovery and litigation of a motion to dismiss, the

settlement occurs at a stage where the parties had a clear view of the strengths and

weaknesses of their cases, thus favoring settlement.  *Orloff v. Syndicated Office Sys., Inc.*,

2004 WL 870691, at *6 (E.D. Pa. Apr. 22, 2004).  Similarly, the motion practice in this case

has provided this Court with the opportunity to familiarize itself with the legal and factual

issues presented in this case.  The Court is therefore in an excellent, fully informed position

to determine the fairness of the Settlement.  The quantity of litigation and the seriousness

with which the parties conducted the settlement negotiations are a factor favoring approval of

this Settlement.  Moreover, the attorneys representing the parties to the Settlement are

seasoned trial attorneys, with extensive experience in this type of litigation.  In particular, the

attorneys representing Plaintiffs include counsel with experience in the litigation,

certification, trial and settlement of consumer class actions and consumer litigation generally.

*See* Doc. 20 at 7-8.

Thus, Class Counsel has agreed to this Settlement on the basis of a well-informed and

clear understanding of the value of the claims being compromised and the benefits being

obtained.  In sum, given the advanced stage of the proceedings in this case and the familiarity of the Court and Class Counsel with the factual and legal issues underlying the case, the Settlement should be approved.

### C.       Conclusion

For all of the foregoing reasons, Plaintiffs contend that the Settlement readily meets the judicial standard for approval of settlement agreements.

### III.      The petition for attorney's fees, expenses, and award to class representative should be granted.

Class Counsel respectfully submit this petition for an award of attorneys' fees and expenses and award to the Class Representative in conjunction with the proposed Settlement before this Court.  RMS has agreed to pay up to $125,000 in attorney's fees and costs, subject to the Court's approval, to Class Counsel for their services rendered to Plaintiffs and the Class in obtaining the relief provided in the Settlement, and $2,000 to Plaintiff for her services as Class Representative.  Class Counsel request that the Court approve the award of attorney's fees and costs and the award to Plaintiff.

"A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Accordingly, the courts "give[] great weight to the negotiated fee in considering the fee request."  *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741, at * 34 (M.D. Fla. Jan 27, 1998) (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts

to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.")).   As both opposing counsel in this litigation and the payor of Class Counsel's attorney's fees and costs, RMS was the party in the best position and with the strongest motivation to evaluate the reasonableness of Class Counsel's requested fees.   The requested $125,000 award of attorney's fees and costs was separately negotiated with RMS and RMS does not object to an award in that amount.

Further, as set forth in detail in the Affidavits of Class Counsel attached as Exhibits A, B, and C to Ex. 3, the requested award of attorney's fees and costs sum represents over a $25,000 decrease from Class Counsel's "lodestar," that is, the time Class Counsel put into the litigation of this action at their normal and customary hourly rates, plus the out-of-pocket costs Class Counsel incurred in connection with this litigation.   Although the negotiated fee was intended to compensate Class Counsel for the time spent on this case at their usual hourly rates, Class Counsel ultimately spent more time on this case than anticipated, with the result that the requested fee is less than counsel's lodestar.   As established by the Supreme Court and the Eleventh Circuit, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate," or "lodestar."   *Hensley*, 461 U.S. at 433; *see also Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).   The Supreme Court has stated that there is a "strong presumption that the lodestar represents the reasonable fee."   *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

Class Counsel respectfully submit that both the requested hourly rates and number of hours spent on this litigation are reasonable.   "A reasonable hourly rate is the prevailing market

rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.   While the party seeking an award of attorney's fees must satisfy the court "that the requested rate is in line with prevailing market rates," a federal court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1299, 1303.

The requested hourly rates of $150 to $450 are the rates the clients of Class Counsel ordinarily pay for their work in non-contingent cases.   Ex. 3 Ex. A-C.   Class Counsel have attested that their customary hourly rates are in line with the Tampa market for attorneys of comparable experience and skill level.   *Id.*   The rates requested are consistent with the hourly rates courts have awarded in other FDCPA class actions.[1]   Notably, class counsel in the *Buchman v. Bray & Lunsford* FDCPA class action in which Judge Bucklew approved the settlement agreement and fee award, who had less experience than Class Counsel in this case, based his lodestar calculation on an hourly rate of $350.   *Buchman v. Bray & Lunsford*, Case No. 8:07cv1752-SCB-MSS, Doc. 49 Ex. 1 at ¶ 18.   The requested rates are also consistent with the hourly rates other state and federal courts have approved for Class Counsel.   Ex. 3 at Ex. A-C. Further, Class Counsel submit that the work they submitted to the Court is the best evidence of

---

[1]   *See, e.g., Aramburu,* 2009 WL 1086938, at *6 (holding hourly rate of $380 to be reasonable); *Rodriguez v. Pressler & Pressler, L.L.P.,* 2009 WL 689056, at *1 (E.D.N.Y. Mar. 16, 2009) (holding hourly rates of $300-$450 to be reasonable); *Palmer v. Far West Collection Servs., Inc.,* 2008 WL 5397140, at *1 (N.D. Cal. Dec. 18, 2008) (holding hourly rates of $325-$465 to be reasonable); *Carroll v. United Compucred Collections, Inc.,* 2008 WL 3001595, at *2, *4 (M.D. Tenn. July 31, 2008) (holding hourly rates of $175-$500 to be reasonable); *Reade-Alvarez,* 2006 WL 3681138, at *9 (holding hourly rate of $420 to be reasonable); *Perry,* 229 F.R.D. at 121 (holding hourly rates of $295-440 to be reasonable);

the level of skill they exercised in litigating this matter, and that the quality of that work supports the requested rates.

Class Counsel also respectfully petition the Court for an award to the Class Representative in conjunction with the proposed Settlement. Subject to the Court's approval, Defendant has agreed to make a payment of $2,000 to Class Representative Marcia Gaalswyck-Knetzke. Settlement Agreement, Ex. 1, at ¶ 2.3.C. A class representative is "entitled to some incentive award given her effort in bringing [the] action and her participation in discovery." *Aramburu*, 2009 WL 1086938, at *5. An award of $2,000 "is within the range of those found reasonable in other FDCPA cases." *Id.* (collecting cases). Defendants do not contest this award. Payment for the Class Representative should be approved.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Final Approval of Settlement Agreement and Petition for Attorneys' Fees, Expenses, and Award to Class Representative, and enter the proposed Final Approval Order attached as Exhibit 2.

---

*Orloff*, 2004 WL 870691, at *7 (holding hourly rates of $170-390 to be reasonable).

Respectfully Submitted,

J. FRAZIER CARRAWAY

/s/ Katherine Earle Yanes

Florida Bar No. 0764541

James E. Felman, FB# 775568

SAXON, GILMORE, CARRAWAY &
GIBBONS, P.A.

jfelman@kmf-law.com

201 East Kennedy Boulevard, Suite 600

Katherine Earle Yanes, FB# 0159727

Tampa, Florida 33602

kyanes@kmf-law.com

Phone: (813) 314-4500

KYNES, MARKMAN & FELMAN, P.A.

Fax: (813) 314-4555

Post Office Box 3396

fcarraway@saxongilmore.com

Tampa, Florida 33601-3396

Telephone:  (813) 229-1118

Facsimile:  (813) 221-6750

THOMAS A. LASH
Florida Bar No. 849944
LASH & WILCOX, P.A.
4006 MacDill Ave.
Tampa, Florida 33661
Phone: (813) 832-3210
Fax: (813) 832-5205
tlash@lashandwilcox.com

*Co-Counsel for Plaintiff Marcia Gaalswyck-Knetzke*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 1, 2009, I electronically filed the foregoing with the

Clerk of the Court which will send a notice of electronic filing to:

Ernest H. Kohlmyer, III, Esquire
BELL, ROPER & KOHLMYER, P.A.
2707 East Jefferson Street
Orlando, Florida 32803
Skohlmyer@bellroperlaw.com

David M. Schulz, Esquire
Hinshaw & Culbertson LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
dschultz@hinshawlaw.com

/s/ Katherine Earle Yanes
Katherine Earle Yanes, Esquire